1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 8/23/2011**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

BENTON P. ZWART, M.D., M.P.H. and
CHRISTOPHER JONES, on behalf of themselves
and all other similarly situated,

Plaintiffs,

v.

HEWLETT-PACKARD COMPANY,

Defendant.

Case No. 5:10-cv-03992-JF (HRL)

**ORDER[1] GRANTING MOTION TO
DISMISS PLAINTIFFS' SECOND
AMENDED CLASS ACTION
COMPLAINT WITHOUT
LEAVE TO AMEND**

[Re: Docket No. 32 ]

Defendant Hewlett-Packard Company ("HP") moves pursuant to Fed. R. of Civ. Pro.
12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint ("SAC").  The Court
has considered the moving and responding papers and the oral arguments of counsel presented at
the hearing on June 10, 2011.  For the reasons discussed below, the motion will be granted,
without leave to amend.

---

[1] This disposition is not designated for publication in the official reports.

# I. BACKGROUND

Plaintiff filed this putative class action on behalf of purchasers of Hewlett-Packard notebook computers who believed that the wireless cards included therein were capable of operating on both the 2.4 GHz and 5.0 GHz frequency bands.  On February 25, 2011, this Court dismissed Plaintiffs' First Amended Complaint ("FAC") because that pleading did not allege facts sufficient to state a claim.  Specifically, the Court concluded that "Plaintiffs [did] not allege that HP ever represented that the components available for customized-to-order notebooks also would be available for the entire model series," and that "Plaintiffs simply [did] not explain what led them to believe that the wireless cards available in computers for purchase at retail stores are identical to the cards available in computers sold online."  Order at 5-6.  Plaintiffs were granted leave to amend their pleading to address these shortcomings.  On March 16, 2011, Plaintiffs filed the operative Second Amended Complaint ("SAC"), alleging that HP's website contained an "Overview Section" that applied to both customized-to-order and off-the-shelf computers.  SAC ¶¶ 31, 37-38, & 54.  The narrow issue presented here is whether Plaintiffs' new allegations are sufficient to state a claim.

Plaintiff Zwart alleges that on April 24, 2010 he purchased a Toshiba notebook containing a wireless card that operated on the 2.4 GHz frequency band.  SAC ¶25.  The next day, he read an Office Depot advertisement for the HP G71-340US, an HP notebook that had specifications comparable to those of the Toshiba.  SAC ¶26.  The Office Depot website did not specify the frequency band of the wireless card in the HP model.  SAC ¶27.  Zwart viewed the "Overview Section" and the "Specs" tab for the G71 series on the HP website, but information about the frequency band specifications of the wireless card was not provided there.   SAC ¶¶ 28-29.  Zwart then visited the HP website and clicked on the "Help Me Decide" link; through a pop-up window, HP represented that each of its wireless cards "provide[s] up to 270 Mbps in the 2.4 GHz and 5 GHz band."  SAC ¶ 30.  Zwart then cancelled his order for the Toshiba notebook and placed an order for the HP G71-340US, using the Office Depot website.  SAC ¶ 41.  After he received the HP notebook, Zwart attempted to connect to his wireless router using 5.0 GHz, but the notebook could not receive the signal.  SAC ¶ 42.

2

1    Plaintiff Jones alleges that in October 2009, he saw an HP TX2Z-1000 offered at a small

2  online retailer.  SAC ¶ 49.  Since the retailer did not offer any information about the frequency

3  band specifications of the wireless network card, Jones viewed the "Overview Section" and the

4  "Specs" tab for the TX2 series on the HP website, but as with Zwart's model information about

5  the frequency band specifications of the wireless card was not provided there.  SAC ¶¶ 50-52.

6  Jones also clicked on the "Help Me Decide" link, and via a pop-window, HP represented that its

7  wireless card "provide[s] up to 270 Mbps in the 2.4 GHz and 5 GHz band."  SAC ¶ 53.  After he

8  received the HP notebook, Jones attempted to connect to his wireless router using 5.0 GHz, but

9  the notebook could not receive the signal.  SAC ¶ 62.

10                              **II.  LEGAL STANDARD**

11    "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

12  cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

13  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

14  dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

15  the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843,

16  23 L.Ed.2d 404 (1969).  "To survive a motion to dismiss, a complaint must contain sufficient

17  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim

18  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19  reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

20  129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556,

21  570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Thus, a court need not accept as true conclusory

22  allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact

23  contained in the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th

24  Cir.1994).

25    A complaint also may be dismissed for "lack of subject-matter jurisdiction."  Fed. R. Civ.

26  P. 12(b)(1).  Under Rule 12(b)(1), a defendant may attack jurisdiction facially or factually.  *Safe*

27  *Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Under a facial attack, the

28  defendant asserts that "the allegations in [the] complaint are insufficient on their face to invoke

1  federal jurisdiction." *Safe Air For Everyone*, 373 F.3d at 1039.  A dismissal for lack of standing

2  is "properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of

3  subject matter jurisdiction." *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1021 (9th Cir.

4  2009).

5       Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

6  be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.1995).  When

7  amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*,

8  90 F.3d 386, 393 (9th Cir.1996).

9                          **III.  DISCUSSION**

10 **A. Consumers Legal Remedies Act and Unfair Competition Law**

11      Plaintiffs allege that HP violated the Consumers Legal Remedies Act ("CLRA") by

12 representing that its notebooks have characteristics or benefits that they do not have, and that the

13 notebooks are of a particular standard or quality grade when in fact they are not.  SAC §§ 76-87.

14 Plaintiffs also allege that HP did not intend to sell its notebooks as advertised.  *Id.*  Plaintiffs base

15 their claim on the representations made by HP on its website.  Plaintiffs point specifically to the

16 statement at the "Help Me Decide" link that HP notebooks operate on both the 2.4 GHz and 5.0

17 GHz frequency bands.

18      Under the CLRA, representing that goods have characteristics or benefits that they do not

19 is unlawful.  Cal. Civ. Code § 1770(a)(5).  The statute also prohibits false representations that

20 goods are of a particular standard or quality.  Cal. Civ. Code § 1770(a)(7).  To prevail on a claim

21 under the CLRA, a plaintiff must prove that the alleged misrepresentation induced him to alter

22 his position.  *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993).

23      Plaintiffs also allege that HP violated the Unfair Competition Law ("UCL") by

24 representing to consumers that its wireless network cards are capable of operating on both the 2.4

25 GHz and 5.0 GHz frequency bands.  SAC §§ 88-95.  To state a claim for fraud under the UCL "it

26 is necessary only to show that members of the public are likely to be deceived" by the business

27 practice or advertising at issue.  *In re Tobacco II Cases*, 46 Cal.4th 298, 312, 93 Cal. Rptr. 3d

28 559, 207 P.3d 20 (2009)(citations omitted).  However, such a claim may be brought only by a

4

1  person "who has suffered injury in fact and has lost money or property as a result of the unfair

2  competition" may bring an UCL claim.  Cal. Bus. & Prof. Code §§ 17204.   A plaintiff also must

3  "plead and prove actual reliance to satisfy the standing requirement."  *In Re Tobacco II Cases*, 46

4  Cal.4th at 328.

5  **1. Standing**

6       HP argues that Plaintiffs lack standing to allege a claim under either the CLRA or the

7  UCL.  To have standing, a plaintiff must have suffered an injury in fact, a causal connection must

8  exist between the injury and the defendant's conduct, and it must be likely that the injury will be

9  redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112

10 S.Ct. 2130 (1992).   This Court dismissed the FAC for lack of standing, and it now must assess

11 whether Plaintiffs' additional allegations cure this deficiency.

12      HP contends that Plaintiffs still have failed to identify any actionable misrepresentation.

13 It points out that Plaintiffs now allege that the "Help Me Decide" link was accessible in the

14 "Overview Section" of HP's website as well as on the customization page.  HP asserts that the

15 statement in the pop-up window on its website that reads "provide[s] up to 270 Mbps in the 2.4

16 GHz and 5 GHz band" is not a representation at all.  However, because the pop-up window is

17 activated when an online shopper browses the website, it is reasonable to infer at the pleading

18 stage that the text contained within is a representation about HP's products.

19      HP argues more persuasively that the statements in the pop-up window cannot reasonably

20 be expected to apply to non-customized-to-order notebooks.  The "Help Me Decide" link appears

21 only when the shopper is faced with a *choice*, and the pop-up window *helps the shopper decide*

22 which option to select.  HP observes that there is nothing for the consumer to decide with respect

23 to a laptop that is not customized.  Although Plaintiffs' factual allegations must be accepted as

24 true, the Court need not accept unreasonable inferences.  *Clegg v. Cult Awareness Network*, 18

25 F.3d 752, 754-755 (9th Cir. 1994).  Here, the fact that Plaintiffs clicked on the "Help Me Decide"

26 link and bought an HP notebook because the pop-up box reads "provide[s] up to 270 Mbps in the

27 2.4 GHz and 5 GHz band" requires an inference that the statements accessed through this link

28 apply to all HP notebooks within a series, regardless of whether they are customized-to-order or

5

off-the-shelf.

The Court agrees with HP.  The words "Help Me Decide" obviously relate to a choice, and the choice in question is irrelevant outside of the customization process.  The "Help Me Decide" pop-up window contains neither statements about nor references to off-the-shelf computers.  The screenshots provided by Plaintiffs illustrate that HP did not list any prices in the "Overview Section," SAC ¶ 20, and the overview contains an asterisk indicating that the actual price of the product will depend on the customized options chosen.  Most importantly, the pop-up window does not contain a product description.  Unlike the "Tell Me More" link, which provides more detail about off-the-shelf products, the "Help Me Decide" link only describes options that can be installed on a customized-to-order notebook.

**2. Reliance**

HP also argues that Plaintiffs have failed to allege plausible reliance on HP's statements, and that Plaintiffs' decisions to buy their off-the-shelf laptops without inquiring into the capabilities of the wireless cards cannot be attributed to any wrongdoing on behalf of HP.  Again, the Court agrees.  Plaintiffs claim that the effect of HP's alleged failure to point out the difference between customized-to-order and off-the-shelf products is that a reasonable consumer would not understand the representations at the "Help Me Decide" link to be limited to customized-to-order notebooks.  SAC ¶ 39.  As HP points out, the Court made clear in its earlier ruling that Plaintiffs may allege *either* that HP misrepresented that its wireless cards operated on the 5.0 GHz frequency band, *or* that HP's representations were so confusing that they misled consumers.  Order at 6.  HP asserts that Plaintiffs should not be permitted to ignore this direction from the Court, and that in any case Plaintiffs' allegations that the customization page was confusing are insufficient.

Plaintiffs argue that a customer could rely on the representation in the Overview Section that HP's wireless cards operate at 5.0 Ghz and at the same time be confused as to whether the representations in the customization section were limited to customized-to-order laptops.  At oral argument, Plaintiffs contended that HP should have included explicit language on its website at the "Help Me Decide" link making clear that the choices related only to customized-to-order

6

1    products.  HP concedes that it sells both pre-configured and customized-to-order computers on

2    its website, but it points out that the "Help Me Decide" link comes up only when a consumer is

3    seeking information about a customized-to-order computer.

4            While the Court appreciates Plaintiffs' efforts to clarify their claim, their confusion

5    argument simply does not follow from the facts actually alleged in the complaint.  A "Help Me

6    Decide" link in the customization section is not intended to provide information about off-the-

7    shelf laptops, and Plaintiffs reasonably could not have relied on the information at the "Help Me

8    Decide" link in deciding what products to purchase at Office Depot.  Even if Plaintiffs made an

9    honest mistake, the legal responsibility for that mistake cannot be attributed to HP.

10           **3. Rule 9(b) Standard**

11           HP also contends that because Plaintiffs' UCL claim sounds in fraud, Plaintiffs must

12   plead "with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Plaintiffs

13   argue that the heightened pleading standard of Rule 9(b) does not apply because they do not

14   allege common law fraud, and fraud is not an essential element in CLRA and UCL claims.  *Vess*

15   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  When fraud is not an essential

16   element of a claim, only the allegations of fraudulent conduct must satisfy the heightened

17   requirements of Rule 9(b).  *Id.* at 1104-05.  Plaintiffs' allegations that HP represented that its

18   wireless cards operate in the 5.0 GHz frequency band when in fact they do not are subject to this

19   standard.  As discussed above, Plaintiffs have failed to meet this standard, as they do not explain

20   how HP's representations about customized-to-order laptops apply to the off-the-shelf computers

21   they purchased.

22   **B. Express Warranty**

23           Plaintiffs allege that HP breached an express warranty by description.  SAC §§ 96-107.

24   Pursuant to Cal. Comm. Code § 2313(1)(b), "[a]ny description of the goods which is made part

25   of the basis of the bargain creates an express warranty that the goods shall conform to the

26

27

28

Case No. 5:10-CV-03992-JF (HRL)
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT
(JFEX2)

1  description."[2]  Here, Plaintiffs allege that HP expressly warranted through the product

2  specifications on its website that the wireless cards in its off-the-shelf laptops are capable of

3  operating in both the 2.4 GHz and 5.0 GHz frequency bands.

4      When analyzing a claim for breach of an express warranty, a court must resolve three

5  issues. *Keith v. Buchanan*, Cal. App. 3d 13, 20, 220 Cal. Rptr. 392 (Cal. Ct. App. 1985).  First, it

6  must determine "whether the seller's statement amounts to an 'affirmation of fact or promise' or

7  'description of the goods.'" *Id.*  Second, it must evaluate the promise to determine if it was "part

8  of the basis of the bargain." *Id*.  Third, it must analyze whether the seller breached the warranty.

9  *Id.*

10     HP argues that Plaintiffs have not alleged facts sufficient to plead any of these elements.

11 First, Plaintiffs have not identified a statement made by HP concerning its off-the-shelf products

12 that constitutes an express warranty.  Second, because HP expressly disclaimed any warranty

13 beyond its limited warranty, no express warranty could have existed.  *See Long v. Hewlett-*

14 *Packard Co.*, C 06-02816, 2007 WL 2994812 (N.D. Cal. July 27, 2007) and *Nygren v. Hewlett-*

15 *Packard Co.*, No. 07-CV-05793, Docket No. 81 (N.D. Cal. May 28, 2009).

16     Plaintiffs argue that HP made a promise relating to its notebooks because the "Help Me

17 Decide" pop-up box is part of the product description.  Plaintiffs also attempt to distinguish *Long*

18 and *Nygren* because HP is not seeking to limit a consumer remedy but refuses to offer any

19 remedy.  They also point out that under California law any ambiguity in a waiver of warranty is

20 construed against the seller.  *Hauter v. Zogarts*, 14 Cal. 3d 104, 199, 534 P.2d 377 (1975).

21     Although California case law suggests that under appropriate circumstances HP's limited

22 warranty would not bar a claim for express warranty by description, that issue need not be

23

24     [2]The Uniform Commercial Code explains that
       [a] description need not be by words. Technical specifications, blueprints and the like can
25     afford more exact description than mere language and if made part of the basis of the
       bargain goods must conform with them. Past deliveries may set the description of quality,
26     either expressly or impliedly by course of dealing. Of course, all descriptions by
       merchants must be read against the applicable trade usages with the general rules as to
27     merchantability resolving any doubts.

28     U.C.C. § 2-313 cmt. 5.

8

1   resolved here, as Plaintiffs have not pled sufficient facts to show a breach.  As already discussed

2   at length, the "Help Me Decide" link was directed to customized-to-order, not off-the-shelf,

3   purchasers.  Without a promise relating to off-the-shelf products, there was no express warranty,

4   and no breach could have resulted.

5                                          **IV.  ORDER**

6          Despite several opportunities to amend their complaint and specific direction from the

7   Court, Plaintiffs have been unable to state a viable claim, and the Court concludes that further

8   amendment would be futile.  Accordingly, the motion to dismiss will be GRANTED, without

9   leave to amend.

10  IT IS SO ORDERED.

11

12  DATE: 8/23/2011

13                                          JEREMY FOGEL
                                            United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:10-CV-03992-JF (HRL)
ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT
(JFEX2)